UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LOUISIANA ENVIRONMENTAL ACTION           CIVIL ACTION
NETWORK AND SIERRA CLUB


VERSUS                                   NO.  06-4161


MICHAEL D. MCDANIEL, IN HIS OFFICIAL     SECTION "R" (2)
CAPACITY AS SECRETARY OF LOUISIANA
DEPARTMENT OF ENVIRONMENTAL QUALITY.


## ORDER AND REASONS

Before the Court are defendant's motion to dismiss and

plaintiffs' and defendant's cross-motions for summary judgment.

Because plaintiffs have not demonstrated that they have suffered

a concrete and particularized injury, they lack standing to bring

this lawsuit. Accordingly, the Court dismisses the case.


I.   **BACKGROUND**

A.   **The Emergency Hurricane Orders**

In the aftermath of Hurricanes Katrina and Rita, the

Louisiana Department of Environmental Quality issued emergency
orders altering existing state regulations for the disposal of
solid waste at certain landfills. LDEQ promulgated the first such
order on August 30, 2005, the day after Katrina struck southeast
Louisiana. On September 27, 2005, LDEQ adopted a similar,
separate order in the wake of Rita. These orders designated
certain parishes as "emergency areas" to which the temporary
regulations applied and contained 60-day automatic expiration
clauses. Since LDEQ first adopted these orders it has
consistently renewed them, modifying their terms and reducing the
number of parishes to which they apply over time. On July 13,
2007, LDEQ adopted the current orders, the "11th Katrina Order"
and the "8th Rita Order."[1] Unlike the previous, now-expired
orders that required landfills in emergency areas to apply to
LDEQ for authorization to operate under the temporarily altered
regulations, the current orders specifically name the only
landfills that are authorized to operate under the orders. The

---

[1] *See* "Eleventh Amended Declaration of Emergency and
Administrative Order" ("11th Katrina Order"), found at:
http://www.deq.louisiana.gov/portal/portals/0/news/pdf/
HurricaneKatrina11thAmeDecAdmOrder070307.pdf; "Eighth Amended
Declaration of Emergency and Administrative Order" ("8th Rita
Order"), found at:
http://www.deq.louisiana.gov/portal/portals/0/news/pdf/Hurricane
Rita8thAmeDecAdmOrder071307.pdf.

current orders apply to a total of six landfills, four in the
greater New Orleans area — the Gentilly Landfill in New Orleans,
Highway 90 Landfill and River Birch Landfill in Avondale, and
Tidewater Sanitary Landfill in Venice — and two in Cameron Parish
in southwest Louisiana — the Romero Landfill and Wilkerson
Transportation Landfill. *See* 11th Katrina Order § 2(a) at 4; 8th
Rita Order §§ 1(b), 2(b) at 4, 5. Similar to the previous orders,
the current orders provide that authorization to operate under
the temporary regulations is valid only for the duration of the
temporary orders and that once the orders expire, landfills must
operate in accordance with existing regulations. *See* 11th Katrina
Order § 2(b) at 5; 8th Rita Order §§ 1(b), 2(b) at 4, 5. In light
of the temporary force and the automatic expiration of previous
emergency orders, the Court finds that there is a live
controversy only as to the terms of the current orders as they
apply to the six authorized facilities.

   The current orders authorize designated construction and
demolition (C&D) or Type III landfills to dispose of waste under
an expanded definition of C&D debris. The expanded definition is
significant because C&D landfills are subject to less restrictive
safety, reporting, and monitoring requirements than municipal
solid waste or Type II landfills. Under the current orders, the

3

definition of C&D debris includes the following material specifically excluded under existing state regulations governing solid waste disposal: furniture, carpet, and painted or stained lumber from demolished buildings; the incidental admixture of construction and demolition debris with asbestos-contaminated waste; and yard waste and other vegetative matter. *Compare* La. Admin Code § 33:VII.115 *with* 11th Katrina Order App. A at 14 *and* 8th Rita Order App. A at 14. The appendices to these orders specify, however, that the disposal of asbestos-contaminated materials is still subject to federal and state emissions standards for hazardous air pollutants. *See* 11th Katrina Order App. A at 14 n.2; 8th Rita Order App. A at 14 n.2. The orders also provide that white goods and putrescible waste are not permitted to be disposed of in C&D landfills. *See* 11th Katrina Order §§ 2(b)-(d) at 5-6; 8th Rita Order §§ 2(b)-(d) at 5-6. The appendices state that white goods and putrescible waste

> shall not be disposed in a construction and demolition
> debris landfill, but segregated and transported to [an LDEQ]
> approved staging area for eventual management, recycling
> and/or disposal at a permitted Type II Landfill, unless it
> is not practicable to segregate such waste at any point
> prior to disposal."

*See* 11th Katrina Order App. A at 14; 8th Rita Order App. A at 14. These terms concerning C&D debris apply to all six designated

landfills under the current orders.

Earlier emergency orders allowed authorized landfills to discharge pollutants into state waters without a permit. Under the current orders, however, only the two landfills in Cameron Parish covered by the 8th Rita Order are authorized to do so. No landfills in the greater New Orleans are authorized to discharge pollutants into state waters without a permit. *Compare* 11th Katrina Order § 1(b) at 3-4 *with* 8th Rita Order § 1(b) at 3-4.

**B.   The Plaintiffs' Claims**

The plaintiffs in this action are the Louisiana Environmental Action Network (LEAN) and the Sierra Club, non-profit environmental organizations with members who allege they either use, or live in, areas affected by the landfills covered by the emergency orders. The plaintiffs sued Michael D. McDaniel, the Secretary of LDEQ, in his official capacity in this Court on August 9, 2006. LEAN and the Sierra Club allege that the emergency orders permit the disposal of waste in a manner that endangers the public health, welfare, and environment. Plaintiffs argue that the hurricane orders violate the Supremacy Clause of the United States Constitution because they conflict with and/or are preempted by the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901-6992k, the Clean Water Act (CWA), 33

5

U.S.C. §§ 1251-1387, and the Clean Air Act (CAA), 42 U.S.C. §§ 7401-7671q.

Plaintiffs first argue that the hurricane orders conflict with RCRA's prohibition on "open dumping," 42 U.S.C. § 6945(a), by permitting the disposal of household waste in C&D landfills instead of municipal solid waste landfills. In essence, they argue that the hurricane orders allow designated C&D landfills to function as municipal landfills but without the same safety precautions and are thus open dumps. Second, they argue that the hurricane orders conflict with the CWA, 33 U.S.C. § 1311, by allowing the discharge of water pollution from C&D landfills without a CWA permit. Finally, they argue that the hurricane orders conflict with the CAA, 42 U.S.C. § 7412(e), by letting individuals dispose of asbestos-contaminated debris in C&D landfills. The plaintiffs seek a declaratory judgment that these federal statutes preempt the hurricane orders and an injunction against further implementation of these orders, along with attorney's fees. In support of their motion for summary judgment, plaintiffs have submitted affidavits from association members. In its motion for summary judgment, LDEQ challenges both the merits of plaintiffs' claims and their standing to sue.

**C.   The Nature of Plaintiffs' Claims**

6

Each of the federal statutes whose preemptive force plaintiffs invoke includes a citizen suit provision. In general, the statutes authorize individual citizens or plaintiff organizations to bring suit against individuals or entities that violate permitting requirements or substantive standards under the respective statute. Each statute also authorizes plaintiffs to bring suit against the EPA for failure to perform any nondiscretionary duty. *See* 42 U.S.C. § 6972 (RCRA); 33 U.S.C. § 1365 (CWA); 42 U.S.C. 7524 (CAA). The plaintiffs, however, do not seek to halt allegedly harmful dumping under these citizen suit provisions. Instead, plaintiffs bring a constitutional claim, asserting that the hurricane orders violate the Supremacy Clause because they conflict with the preemptive regulatory framework established by the federal environmental laws.

## II.  STANDING

Under Article III, § 2 of the Constitution, federal judicial power is limited to justiciable cases or controversies. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (*Lujan II*). Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Therefore, a case is

properly before a federal court only when the plaintiff has standing to sue. The Fifth Circuit strictly enforces the standing requirement as an essential element of subject matter jurisdiction. *See Doe v. Tangipahoa Parish Sch. Bd.*, __ F.3d __, __, 2007 WL 2122017, at *1 (5th Cir. July 25, 2007) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986)). Under Federal Rule of Civil Procedure 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action."

For an association to have Article III standing, it must demonstrate that its individual members have standing in their own right, that the interests represented are germane to the organization's purpose, and that the relief sought does not require the participation of individual members. *See Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). To show that individual members have standing, an organizational plaintiff must establish three distinct elements. First, individual members "must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not

8

conjectural or hypothetical." *Lujan II*, 504 U.S. at 560 (internal quotations and citations omitted). Second, the harm must be "fairly traceable" to the defendant's challenged conduct. *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations omitted).

The party invoking federal jurisdiction – in this case the plaintiffs — bears the burden of establishing standing. Since the requirements of standing are essential elements of any claim, they must be "supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of proof required at the successive stages of the litigation." *Id.* On a motion for summary judgment, the plaintiff must set forth specific facts in the form of affidavits or other evidence that, when taken as true, establish these elements. *See id.*

## III. DISCUSSION

In determining whether LEAN and the Sierra Club have standing, the Court first analyzes whether they have met their burden of demonstrating a concrete injury. The current orders present a live controversy with respect to six landfills. Thus,

plaintiffs must show that they have suffered injuries as a result of activities at these facilities.

To establish injuries among their members, plaintiffs have submitted three affidavits. Each of these addresses conditions at the Chef Menteur Landfill, and one also concerns the Gentilly Landfill.[2] The Court's review of the affidavits reveals that the plaintiffs have not demonstrated that they have suffered concrete and particularized injuries from the application of the hurricane orders to any of the remaining six landfills still within the purview of the orders.  The affiants do not demonstrate personal knowledge of harmful conditions at any of the landfills. As explained, *infra*, in the absence of any evidence about the conditions at the landfills that are allegedly violating federal environmental statutes, plaintiffs cannot establish any injury resulting from the application of the emergency orders to these facilities.

As an initial matter, only one of these affidavits — Reverend Nguyen's declarations about the Gentilly Landfill —

---

[2]*See* Nguyen Aff., R. Doc. 7-3 at 39-43 (Chef Menteur and Gentilly); Koch Aff., R. Doc. 7-3 at 44-45 (Chef Menteur); Tran Aff., R. Doc. 7-3 at 46-48 (Chef Menteur). Plaintiffs initially submitted an affidavit by Allen Green concerning the presence of white goods at the Industrial Pipe Landfill, but at oral argument plaintiffs' counsel informed that Court that it need not consider Green's statement.

concerns any of the six landfills that is covered under the
current orders. The affidavits do not include statements about
conditions at the other five covered landfills. Furthermore, the
submitted affidavits are problematic because the affiants do not
state that they have personal knowledge that harmful pollution
has occurred or is actually occurring at any facilities. The
individuals state that they "understand" and/or "believe" that
the hurricane orders allow activities that are allegedly
inconsistent with federal environmental statutes. But they give
no foundation for their understanding or beliefs. They state
further that they do not want to visit, live, or work in areas
near the landfills "*if* [they do] not meet federal safety
regulations." *See, e.g.,* Nguyen Aff. ¶ 6, R. Doc. 7-3 at 40
(emphasis added). They do not state from personal knowledge that
the landfills are in fact not meeting safety requirements. Nor do
they give any indication that they were personally exposed to the
type of pollution they complain of. Plaintiffs have not alleged
facts from which the Court may infer that they were injured by
past violations of the RCRA, CWA, or CAA at any landfills covered
under the current hurricane orders. In fact, at oral argument,
plaintiffs' counsel informed that Court that plaintiffs did not
know what the landfills were doing. It is particularly telling of

11

plaintiffs' lack of concrete injury that the hurricane orders had been in effect for more than a year before plaintiffs submitted their affidavits, and they were still unable to allege from personal knowledge that pollution had caused them harm.

The Fifth Circuit is clear that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts that would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Thomas v. Atmost Energy Corp.*, 223 Fed. Appx. 369, 373 (5th Cir. 2007) (quoting Fed. R. Civ. P. 56(e)). Additionally, "[m]aterial that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991). Federal Rule of Evidence 602 requires witnesses to have personal knowledge of facts to which they testify in order for the testimony to be admissible. Plaintiffs' mere understanding or belief is insufficient to establish the requisite personal knowledge. *See Provident Life and Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001). Therefore, these statements are insufficient to establish that plaintiffs' alleged harm stems from wrongful pollution and not a generalized distaste for living

12

near a landfill.

Plaintiffs' arguments that their aesthetic and recreational interests in the areas surrounding the landfills are impaired by waste disposal activities are insufficient by themselves to establish injury for purposes of standing. Clearly, these interests are protectible. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 183 (2000); *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 557 (5th Cir. 1996) (citing *Save Our Community v. E.P.A.*, 97 F.2d 1155, 1161 (5th Cir. 1992)). And plaintiffs need not show actual injury to the environment only that *they* have suffered an injury. *See Laidlaw*, 528 U.S. at 181. But plaintiffs must establish that some activity that would cause a concrete and particularized injury has actually occurred or is imminent. *Lujan*, 504 U.S. at 561. Plaintiffs have established that they find the sights and smells of landfills offensive, but they have not even alleged that their injuries are a result of activities at covered landfills in violation of the RCRA, CWA, and CAA.

The insufficiency of plaintiffs' standing allegations is compounded by the nature of the claims they bring and the arguments the parties make. This lawsuit is not an enforcement action in which plaintiffs specifically document illegal

13

pollution somewhere in the record. Here, plaintiffs assert that the hurricane orders *permit* pollution, and the substantive analysis of the orders' legality involves a comparison of the hurricane orders with the technical requirements of a federal regulatory regime, not a determination that the alleged pollution is actually occurring. LDEQ responds by arguing that there is no conflict between the state and federal regulations. In the case of the disposal of white goods, for example, LDEQ disputes that the terms of the hurricane orders permit dumping of white goods into C&D landfills. It contends the orders require white goods to be disposed of in specially permitted landfills. *See* Def.'s Resp. Pls.' Stmnt. Indisputable Facts, R. Doc. 24-2. As to asbestos, LDEQ points out that the orders expressly incorporate federal and state emissions standards for hazardous air pollutants. *See* Def.'s Mem. Recent Amends. Emergency Orders, R. Doc. 62 at 6. Nowhere in the record have plaintiffs or any other witnesses said that they personally observed the challenged types of dumping or discharge of pollutants at any of the facilities now covered by the current orders.

The standing doctrine still requires a showing of concrete injury caused by challenged conduct even when plaintiffs challenge the legality of a regulatory scheme. The Seventh

14

Circuit has recently addressed this issue in a factually similar case in which environmentalist plaintiffs challenged an E.P.A. pollutant discharge permitting scheme applicable to construction projects as violative of the Clean Water Act. In *Texas Independent Producers and Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964 (7th Cir. 2005), the court concluded that plaintiffs failed to establish the injury element of standing because they provided no evidence of the discharge of any pollutants in violation of the statute. *Id.* at 975. That is, they did not demonstrate the very conduct that they alleged gave rise to their injuries. In affidavit testimony, plaintiffs stated that they *believed* construction projects operating under the permit scheme were contributing to the degradation of waterways. *Id.* at 972. Additionally, the affidavits included conclusory statements about harms caused by construction without demonstrating how any specific construction sites caused harm to plaintiffs. *Id.* at 972. The Seventh Circuit explained that "[r]epeating conclusory allegations of a complaint is not enough" to establish standing. *Id.* at 973 (citing *Lujan v. Nat'l Wildlife* Fed'n, 497 U.S. 871, 888 (1990) (*Lujan I*)).

Plaintiffs' declarations in this suit similarly amount to conclusory statements. Plaintiffs state that the sight and smells

15

of nearby landfills adversely affect the enjoyment of their homes or the adjacent areas. But they do not present any evidence that the challenged types of pollution give rise to this harm. "'[I]t will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege.'" *Id.* (quoting *Lujan I*, 497 U.S. at 889). Plaintiffs bear the burden of establishing every element of standing, and their affidavits fail to demonstrate a concrete injury because they have not shown harm from activities at the still-covered landfills that violate the RCRA, CWA, or CAA.

LEAN and the Sierra Club's claims are also distinguishable from cases in which courts have found standing when plaintiffs allege aesthetic and recreational harms resulting from violations of a federal discharge permit. In *Laidlaw*, for example, plaintiffs alleged that they were reluctant to use a waterway that had been contaminated with mercury discharged from a wastewater treatment plant in violation of the Clean Water Act. The Court found standing, in part, because it was "undisputed that Laidlaw's unlawful conduct — discharging pollutants in excess of permit limits — was occurring at the time the complaint was filed." *Laidlaw*, 528 U.S. at 184. Similarly, in *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149,

16

157 (4th Cir. 2000), the court found that plaintiffs satisfied the injury element of standing because they presented a report documenting over 500 violations of the discharge permit at issue. Finally, the Fifth Circuit in *Cedar Point Oil*, 73 F.3d at 556, emphasized that plaintiffs in their affidavits stated that they were personally familiar with the defendant's discharge of pollution into the protected waterway. LEAN and the Sierra Club have presented no evidence along these lines. Instead, they focus on the possibility that they would be harmed *if* a violation occurred. The plaintiffs do not even aver what substances are in the landfills that would violate the federal environmental statutes at issue in this case. In the absence of statements based on personal knowledge of actual pollution or record evidence making the existence of the pollution likely, plaintiffs have failed to aver facts that, if true, would establish a concrete injury to a protectible interest with respect to the landfills still subject to the hurricane orders. Accordingly, they have failed to establish standing.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that plaintiffs have failed to satisfy the Article III standing

17

requirement. Accordingly, it dismisses this case for lack of
subject matter jurisdiction.


New Orleans, Louisiana, this __5th__ day of September 2007.


                    _____
                        SARAH S. VANCE
                    UNITED STATES DISTRICT JUDGE